**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 1 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KENNETH W. ALDRICH,

      Plaintiff - Appellant,

v.

THE BOEING COMPANY, a
Delaware Corporation,

      Defendant - Appellee.

No. 96-3413

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 95-CV-1083)**

---

Albert F. Kuhl, Law Offices of Albert F. Kuhl, Lenexa, Kansas, for the Plaintiff - Appellee.

Mary K. Babcock (Trisha A. Thelen with her on the brief) Foulston & Siefkin, Wichita, Kansas, for the Defendant - Appellee.

---

Before **PORFILIO** , **MCKAY** and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

This case presents a novel question: May an impairment be substantially

limiting for the purposes of the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12101-12213, before the date a permanent disability rating has been issued by the treating physician? Answering this question in the affirmative, we reverse the judgment of the district court and remand for further proceedings.

## I

Kenneth Aldrich, a former employee of The Boeing Company, appeals the district court's order granting summary judgment in favor of Boeing. The district court held that Aldrich was judicially estopped from pursuing a claim under the ADA and, alternatively, that he had failed to establish that he was a qualified individual with a disability. [1]

Aldrich was an assembly worker at Boeing's facility in Wichita, Kansas, from September 29, 1988, until he was laid off on June 8, 1993. Ten months prior to being laid off, Aldrich informed Boeing's Central Medical Department that he was experiencing pain in his right hand and was having difficulty using hand tools. He was referred to Dr. Harry Morris, an orthopaedic surgeon, for evaluation.

Dr. Morris examined Aldrich in August 1992 and made a preliminary diagnosis of "[c]umulative trauma syndrome manifesting as flexor tendon tenosynovitis." Appellee's Supp. App. at 249. Dr. Morris determined Aldrich

---

[1] Plaintiff also brought a retaliatory discharge claim pursuant to both the ADA and Kansas state law. He does not, however, appeal the district court's grant of summary judgment as to that claim.

was unable to return to work and signed a medical leave of absence form, scheduling him for reevaluation in four weeks. At two subsequent evaluations in September and October, Dr. Morris noted that Aldrich's condition had improved; nevertheless, he extended Aldrich's medical leave of absence.

On November 17, Dr. Morris released Aldrich to return to work, limiting his use of power tools to four hours a day for the first week, but providing for a gradual increase in usage over the course of the following two weeks. Upon returning to work, however, Aldrich was informed by his supervisor that there was no work he could do with those medical restrictions, and was referred to the Personnel Department, where he was immediately placed on medical leave. For a brief period in early December, he was given a work assignment at Boeing's Facilities Department as a member of the "Warn Pool." According to Boeing, the Warn Pool was created to hold employees during the federally mandated sixty-day notice period prior to an anticipated layoff. Boeing removed Aldrich from this position when it discovered that he was not subject to layoff and placed him back on medical leave of absence.

Dr. Morris continued to treat Aldrich and evaluate him on a monthly basis. On April 7, 1993, Dr. Morris rated Aldrich as 15% permanently partially impaired. He wrote: "It is my impression that the patient can return to work but he must be in a job position where he has no rivetting [sic], bucking or power

equipment use. There should be no repetitive grasping, gripping, pushing or pulling as well." Appellee's Supp. App. at 256. Aldrich provided Boeing with Dr. Morris's report on April 19.

Approximately one week before he provided this permanent disability rating to his employer, Aldrich was informed that Boeing had declared a surplus in his job code and that he would be laid off on June 8, 1993. Three weeks prior to plaintiff's scheduled termination, Boeing's Accommodation Review Board met to determine whether Aldrich's permanent restrictions could be accommodated by the company. The Board determined that the limitations Dr. Morris had imposed on Aldrich prevented him from doing his current job, with or without accommodation, and that no other positions were available at that time. The Board thus decided that Aldrich would remain on medical leave of absence until he was terminated on June 8.

During the course of these events, Aldrich applied for disability benefits from several sources. On October 17, 1992, he filed a workers' compensation claim under Kansas law which was eventually settled in 1995 for $30,000. Four months later, Aldrich applied for permanent and total disability benefits under a private disability plan offered by Boeing. His application for benefits was approved in March 1994.

**II**

Noting that Aldrich filed for and received permanent and total disability benefits under Boeing's private disability plan, the district court held that his ADA claim was barred by the doctrine of judicial estoppel. Boeing insists that Aldrich's lawsuit is also barred by this doctrine because of his claim for permanent and total disability benefits under Kansas workers' compensation law and because of plaintiff's testimony at a settlement hearing regarding this claim. [2] We reject both views.

In Rascon v. U S West Communications, No. 96-2194, 1998 WL 223465 (10th Cir. May 6, 1998), this circuit recently held that the application for, or receipt of, social security disability benefits does not estop a plaintiff from pursuing a claim under the ADA. See id. at *6. The logic behind eschewing judicial estoppel of an ADA claim even when the plaintiff has applied for or

_____

[2] Specifically, Boeing argues that Aldrich is estopped because he testified at the workers' compensation settlement hearing as follows:

MR. BYERS [Attorney for Boeing]: Finally, I just wanted to make sure you understand and you agree that the settlement today for $30,000.00 to be paid in a lump sum is based on the fact and the understanding that your work restrictions are permanent, meaning that they won't be changed or lifted, and that these restrictions prevent you from performing the essential functions of the job as a sheet metal mechanic with or without accommodation?

[Kenneth Aldrich]: Yes.

Appellee's Supp. App. at 228.

received disability benefits is that "the ADA takes into consideration whether an individual with a disability can work <u>given reasonable accommodation</u>. The Social Security Act, on the other hand, does not take into consideration whether an accommodation would render the individual able to perform a job." <u>Id.</u> at *7 (emphasis added) (citations omitted). Consequently, claims for social security benefits, because granted without regard to reasonable accommodation, are not necessarily inconsistent with a discrimination claim pursuant to the ADA. <u>See</u> <u>id.</u> It follows that, Aldrich is not estopped from pursuing his ADA claim merely because he applied for and received benefits under Boeing's private disability plan and the Kansas workers' compensation statute—those benefits are also awarded without regard to reasonable accommodation. <u>Compare</u> Boeing, <u>Disability and Life Insurance Plans</u> 8 (1990) (defining permanent and total disability for purposes of Boeing's private disability plan), <u>in</u> Appellee's Supp. App. at 186, <u>and</u> Kan. Stat. Ann. § 44-510c(a)(2) (1993) (defining "permanent total disability" under workers' compensation statute), <u>with</u> 42 U.S.C. § 423(d)(2)(A) (defining "disability" for purposes of social security disability benefits).

Boeing argues that plaintiff should nonetheless be estopped from pursuing his ADA claim because he testified at his workers' compensation settlement hearing that he could not perform his job with or without reasonable

accommodation. Were we to adopt Boeing's approach, however, we would "discourage the determination of cases on the basis of the true facts as they might be established ultimately." United States v. 49.01 Acres of Land, 802 F.2d 387, 390 (10th Cir. 1986) (quoting Parkinson v. California Co., 233 F.2d 432, 438 (10th Cir. 1956)). The Federal Rules of Evidence well provide the means with which to confront plaintiff with such inconsistency. See Fed. R. Evid. 801(d)(2) (permitting introduction in evidence of prior admission by party-opponent). Thus Aldrich's testimony "may constitute evidence relevant to a determination of whether the plaintiff is a 'qualified individual with a disability,'" Rascon, 1998 WL 223465, at *9, but it is not dispositive.

Benefit determinations under the Kansas workers' compensation statute are made without regard to reasonable accommodation. Thus, Aldrich's admission at the settlement hearing was not relevant to the outcome of the proceedings. We see no reason to deviate from Rascon's logic that "statements made in connection with an application for . . . disability benefits cannot be an automatic bar to a disability claim under the ADA" when such benefits are granted without regard to reasonable accommodation. Id.

### III

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual

in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To establish a prima facie case under the Act, plaintiff must therefore demonstrate "(1) that he is 'disabled' within the meaning of the ADA; (2) that he is qualified—with or without reasonable accommodation; and (3) that he was discriminated against because of his disability."  Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997) (citing White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995)).

## A

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Plaintiff contends that he qualified as disabled under the first part of this definition on November 17, 1992—the date Dr. Morris released him to work with restrictions following the

initial diagnosis of flexor tenosynovitis. [3] The district court rejected that contention, finding instead that he was suffering from a "transient nonpermanent condition" and, accordingly, that his impairment was not substantially limiting. Appellant's App. at 875 (citing 29 C.F.R. § 1630.2(j)). [4]

While not defined by statute, the regulations implementing the ADA define the term "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

---

[3] Plaintiff proffers an alternative argument, asserting that Boeing knew he was disabled or regarded him as having a disability as of January 20, 1993, the date he was first assessed by the Accommodation Review Board. This claim is wholly without merit. Boeing presented uncontroverted documentation establishing that the January 20 review was scheduled for the purpose of accommodating permanent limitations unrelated to the diagnosis of flexor tenosynovitis. See Appellee's Supp. App. at 468, 532-33.

[4] The district court's analysis was limited to whether the original expected duration of plaintiff's impairment precluded it from being "substantially limiting" as required under the definition of disability at issue in this case. See 42 U.S.C. § 12102(2)(A). Because Boeing does not challenge that flexor tenosynovitis is an impairment or that a major life activity was affected, we do not address those elements of the definition for the purposes of this summary judgment appeal, and therefore limit our analysis to whether a temporary impairment can be substantially limiting.

29 C.F.R. § 1630.2(j)(1). Several factors are relevant to the determination of whether an impairment is substantially limiting, including: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Although "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities," 29 C.F.R. pt. 1630 app., § 1630.2(j) (emphasis added), "an impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term, or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities," EEOC, Interpretive Manual (1995), reprinted in 2 EEOC Compliance Manual § 902.4(d), at 902-30 (BNA 1997) (" EEOC Compliance Manual ").

Boeing's insistence that it had no duty to accommodate plaintiff under the ADA until plaintiff's doctor issued a permanent disability rating and restrictions in April 1993 is incorrect. To the extent that Boeing argues that we should adopt a per se rule that an impairment may not be regarded as a disability until it is rendered "permanent" by either a doctor's rating or permanent restrictions, it misconstrues the law. Whether an impairment "substantially limits" a major life

activity depends on the individual and the impairment. Such determinations are not susceptible to per se rules; they must be made on a case-by-case basis. See 29 C.F.R. pt. 1630 app., § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). The regulations and the EEOC's interpretive guidelines clearly state that an impairment need not be permanent in order to rise to the level of a disability. See 29 C.F.R. § 1630.2(j)(2)(iii); EEOC Compliance Manual § 902.4(d), at 902-30. Thus, the issuance of a permanent disability rating in April 1993 does not necessarily answer the question of whether plaintiff's impairment previously qualified as a "disability."

Plaintiff argues that Boeing had an ADA duty of accommodation on November 17, 1992, "when he was released to work by Dr. Morris with restrictions." Appellant's Br. at 23-24. We disagree. Dr. Morris's evaluation on that date anticipated that, by applying a progressive work schedule, plaintiff would return to full working capacity within three weeks. Because Aldrich's impairment was then characterized by his own doctor as being of short duration and negligible long-term impact, we reject Aldrich's argument that his impairment was substantially limiting as of November 17, 1992.

From December 9, 1992, however, Aldrich's medical evaluations become considerably less optimistic. On that date, Dr. Morris wrote: "I think at this point with this individual we're going to find he is just not going to be able to do repetitive type activities." Appellee's Supp. App. at 253. Two months later, Dr. Morris referred Aldrich to a Dr. Gluck for a second opinion. Dr. Gluck wrote: "I think that he has undergone [an] appropriate amount of conservative treatment with continuing significant symptoms. I think therefore he would be a good candidate for forearm fasciotomy." Id. at 254. One month later, Dr. Morris again evaluated Aldrich, stating:

> As long as he watches what he does and utilizes some work modification and minimal intensive activity he does fairly well. As soon as he goes over that line he begins to have problems. . . . As far as work is concerned he is certainly going to have difficulty going back to what he previously did. I think that at this point, then, we will state he has reached his maximum medical benefit and we will go ahead and rate him.

Id. at 255. Boeing Central Medical received copies of each of these evaluations.

Although none of these medical evaluations explicitly labels Aldrich's condition as "permanent," each constitutes evidence sufficient to find that plaintiff's impairment had become substantially limiting. Based on the Morris and Gluck statements, a reasonable jury could conclude that, at some point on or after December 9, 1992, Aldrich's flexor tenosynovitis was a severe condition that was permanent or was expected to persist on a long-term basis because its

- 12 -

anticipated duration was indefinite, unknowable, or was expected to be at least several months.  See EEOC Compliance Manual § 902.4(d), at 902-30; cf. Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996) (discussing plaintiff's ability to show disability in light of EEOC interpretive guidelines).  The district court thus erred in concluding as a matter of law that plaintiff could not have been disabled under the ADA until his permanent disability rating was issued in April 1993.

**B**

In order to defeat summary judgment, Aldrich must show not only that he is disabled, but also that he is a "qualified individual."  To determine whether an individual is qualified under the ADA:

> First, we must determine whether the individual could perform the essential functions of the job. . . . Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

White, 45 F.3d at 361-62 (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).

Although Aldrich concedes that he was unable to perform the essential functions of his job, he insists he would have been able to do so with reasonable accommodation.  Aldrich brings in support a report prepared by a certified professional ergonomist which concludes that modifications to his work environment and/or ergonomic training would have allowed him to perform the

essential functions of his original job. The report also states that Boeing could have accommodated Aldrich by transferring him to one of several positions within his skill and grade level.

Viewing the factual record in the light most favorable to the plaintiff, we see a genuine issue of material fact concerning whether work modifications and/or ergonomic training were reasonable accommodations that would have permitted plaintiff to return to his original job as an assembly worker. We also find evidentiary support for plaintiff's argument that there existed two other positions to which he could have been reassigned as a reasonable accommodation.[5] We consider Boeing's statements that employees with

---

[5] The remaining twenty-three jobs Aldrich proffers would not be reasonable accommodations for different reasons. Boeing presented unrebutted affidavits and supporting documentation indicating that no open requisitions existed from November 17, 1992, to June 8, 1993, for sixteen of the jobs. See Appellee's Supp. App. at 144-45, 150-57, 162-63. Boeing is not required to create positions merely to accommodate Aldrich. See White, 45 F.3d at 362 (citing 29 C.F.R. pt. 1630 app., § 1630.2(o)). Neither was Boeing obligated to transfer plaintiff to four of the other remaining positions—Plumber Maintenance B, A, and Special, and Millwright B—because transfer to any of those positions would have constituted a promotion. See 29 C.F.R. pt. 1630 app., § 1630.2(o) ("[A]n employer is not required to promote an individual with a disability as an accommodation."). Finally, had Boeing transferred Aldrich to any of the last three disputed jobs—Maintenance Oiler, Assembler Sub-Assembly B, and Assembler Installer General B—it would have violated the seniority provisions of the collective bargaining agreement. This is not required by the ADA. See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995) (holding transfer to another job that would violate seniority rights under collective bargaining agreement unreasonable); see also Kralik v. Durban, 130 F.3d 76, 83 (3d Cir.

(continued...)

- 14 -

permanent medical restrictions were eligible to be assigned to Factory Service

Attendant A positions and several were placed in those positions in December

1992 and January 1993. See Appellee's Supp. App. at 169-170. Additionally,

according to Boeing records, a requisition for a Factory Clerk C position was

initiated on November 18, 1992 and filled on February 1, 1993. Id. at 151, 159.[6]

Although the records indicate that this position may have been filled by an

_____

[5](...continued)
1997) ("[A]n accommodation to one employee which violates the seniority rights
of other employees in a collective bargaining agreement simply is not
reasonable."); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir.
1997) ("Following the other circuits which have considered this issue, we hold
that the ADA does not require an employer to take action inconsistent with the
contractual rights of other workers under a collective bargaining agreement.");
Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1051 (7th Cir. 1996) ("[T]he
ADA does not require disabled individuals to be accommodated by sacrificing the
collectively bargained, bona fide seniority rights of other employees."); Benson v.
Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir. 1995) ("The ADA does not
require that [the employer] take action inconsistent with the contractual rights of
other workers under a collective bargaining agreement."); cf. Shea v. Tisch, 870
F.2d 786, 790 (1st Cir. 1989) (employer "not required [under Rehabilitation Act]
to accommodate plaintiff further by placing him in a different position since to do
so would violate the rights of other employees under the collective bargaining
agreement"); Carter v. Tisch, 822 F.2d 465, 469 (4th Cir. 1987) (duty to reassign
under Rehabilitation Act "would not defeat the provisions of a collective
bargaining agreement unless it could be shown that the agreement had the effect
or the intent of discrimination"). But see Aka v. Washington Hosp. Ctr., 116 F.3d
876, 894-897 (D.C. Cir.) (holding terms of collective bargaining agreement only a
factor in weighing reasonableness of accommodation), reh'g en banc granted and
judgment vacated, 124 F.3d 1302 (D.C. Cir. 1997).

[6] Despite Boeing's general contention that these records are inaccurate in
places, see Appellant's Supp. App. at 144, 455, 461, it failed to submit any
evidence that this particular entry was incorrect.

employee with Category A rights, they are inconclusive on this point because the individual who filled this position is unnamed. See id. Even if the position was filled by someone with Category A rights in February, that does not defeat plaintiff's claim that the Factory Clerk C position was available as an accommodation prior to February. Because Category A rights do not allow one employee to bump another, it is of no consequence that someone with such rights ultimately filled the position. Plaintiff may prevail so long as he was "disabled" prior to February 1 and he is able to show that transfer to the Factory Clerk C position was a reasonable accommodation.

Because we conclude that a reasonable jury could determine that plaintiff's impairment was substantially limiting for purposes of the ADA, we must also conclude that plaintiff may have been eligible for a Factory Service Attendant A or a Factory Clerk C position as early as December 1992. A genuine issue of material fact remains as to whether reasonable accommodation was feasible, either in the form of job modifications or transfer to a vacant position for which appellant was qualified.[7]

---

[7] In Hudson v. MCI Telecommunications Corp., 87 F.3d 1167, 1169 (10th Cir. 1996), this court held that "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation." Boeing's decision to place Aldrich on medical leave of absence may have been such an accommodation. See id. at 1168-69; see also Burch v. Coca-Cola Co., 119 F.3d 305, 318 n.11 (5th Cir. 1997) (employer's decision to
(continued...)

With respect to the final element of the prima facie case—whether plaintiff was discriminated against on account of his disability—the record contains ample evidence that Boeing placed plaintiff on involuntary medical leave because of his flexor tenosynovitis.  The prima facie case requires nothing more.  See White, 45 F.3d at 361 n.6 (noting that third element of prima facie case is satisfied when employer admits disability played a role in the disputed decision).  Thus, to the extent plaintiff's claim is premised on Boeing's failure to reinstate him prior to his scheduled termination, the record is replete with evidence that such failure was a direct result of his alleged disability.

Plaintiff's claim, however, is slightly more complex than a mere allegation of failure to reinstate.  Plaintiff consistently argued below, as he does here, had

---

[7](...continued)

retain employee on suspension with full pay may have been a reasonable accommodation) (citing  Hudson , 87 F.3d at 1169);  Hankins v. The Gap, Inc.  , 84 F.3d 797, 801 (6th Cir. 1996) ("paid sick leave, paid personal days, a voluntary time off program, and ample and flexible vacation time" constitute reasonable accommodation); 29 C.F.R. pt. 1630 app., § 1630.2(o) (reasonable accommodations "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); 29 C.F.R. pt. 1630 app., § 1630.15(b) & (c) ("[A]n employer . . . may, in appropriate circumstances, have to consider the provision of leave to an employee with a disability as a reasonable accommodation, unless the provision of leave would impose an undue hardship.").  Because Boeing does not contend, however, that it reasonably accommodated Aldrich by providing him with leave time, we decline to answer that question on appeal.

Boeing offered him an accommodation, he would have survived the reduction-in-force that resulted in his termination on June 8, 1993. Although Aldrich concedes that the reduction-in-force was validly implemented, he notes that he would not necessarily have been dismissed had Boeing transferred him to a vacant position because that position might not have been subject to the reduction-in-force. To the extent plaintiff's claim is premised on the argument that workplace modifications or ergonomic training would permit him to perform his original job, his own concession that the reduction-in-force was based solely on seniority limits his claim to one for backpay through June 8, 1993, because he cannot show discrimination caused the termination—he can only show that discrimination was the basis for being placed on involuntary medical leave.

If, however, plaintiff prevails on a theory that transfer to a Factory Service Attendant A position would have been a reasonable accommodation, there is evidence before us that supports Aldrich's claim that he may have remained in that position through early July. See Appellant's App. at 639, 649-50 (listing start dates and termination dates of employees in Factory Assistant A positions). There is no evidence in the record that the employee placed in the Factory Clerk C position on February 1, 1993, was ever terminated. Thus, there remains a further issue of material fact as to whether plaintiff's employment would have continued past June 8, 1993, and, if so, for how long. We, of course, do not

resolve this issue on appeal and note only that plaintiff may be able to establish that his tenure at Boeing would have been of longer duration depending on the nature of the accommodation.

We **REVERSE** the judgment of the district court and **REMAND** for further proceedings.