Pamela HINES, Plaintiff,

v.

CHRYSLER CORPORATION,
Defendant.

Civil Action No. 98–N–1462.

United States District Court,
D. Colorado.

Sept. 30, 2002.

David H. Miller, King & Greisen, LLP, Denver, CO, for Plaintiff.

John D. Dunbar, Kelly S. Moothart, Daniels & Kaplan, P.C., Kansas City, MO, Robert H. Winter, Denver, CO, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an employment discrimination case. Plaintiff Pamela Hines claims that Defendant Chrysler Corporation ("Chrysler") violated title I of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 to 12213 (West 1995 & Supp.2001) [hereinafter "ADA"], by refusing to accommodate her disability and terminating her employment. This matter is before the court on "Defendant's Motion for Summary Judgment" filed March 15, 2001. Jurisdiction is based on 42 U.S.C.A. § 12111, 28 U.S.C.A. §§ 1331, 1337, 1343, and 1367 (West 1993 & Supp.2001).

### FACTS

*1. General Background*

In 1993, Chrysler hired Hines to work in its Denver Parts Distribution Center ("Denver facility"). (Br. in Supp. of Def.'s Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Mar. 31, 2001] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 1 [filed May 15, 2001] [hereinafter "Pl.'s Resp."].) A series

of national and local collective bargaining agreements between Chrysler and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("Union") governed the terms of employment for employees at the Denver facility, including Hines. (*Id.,* Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 2.) From 1993 until her employment termination on August 29, 1997, Hines was classified as a "picker-packer." (Pl.'s Resp., Statement of Additional Disputed Facts ¶¶ 1–2; *admitted at* Reply Br. in Supp. of Def.'s Mot. for Summ. J., Resp. Concerning Pl.'s Statement of Additional Disputed Facts ¶¶ 1–2 [filed June 5, 2001] [hereinafter "Def.'s Reply"].) Chrysler offers thirteen jobs under the picker-packer classification. (Def.'s Reply, Ex. M [Walker Aff., Attach A (Seniority Jobs) ].) Although the parties have not identified which job Hines held under the picker-packer classification, it is undisputed that Hines was an hourly employee who retrieved parts from the warehouse as those parts were requested. (Pl.'s Resp., Statement of Additional Disputed Facts ¶¶ 1–2; *admitted at* Def.'s Reply, Resp. Concerning Pl.'s Statement of Additional Disputed Facts ¶¶ 1–2.)

On April 17, 1997, Hines injured her lower back while on the job. (Def.'s Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 7.) Hines was given a temporary light-duty assignment until August 29, 1997, when her physician permanently restricted her from lifting objects weighing more than twenty pounds from below the waist and objects weighing more than thirty-five pounds from the waist to over her head. (*Id.,* Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 6.) Hines' physician

also restricted her from performing job functions requiring sitting for long periods or jobs which would require her to squat, kneel, or climb stairs. (*Id.,* Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 6.)

On August 29, 1997, after Chrysler was informed of her medical restrictions, Chrysler terminated Hines' employment because she could not perform the lifting, bending, and twisting required to perform her picker-packer position. (*Id.,* Statement of Undisputed Material Facts ¶¶ 10–11; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 10–11.) Hines admits that, after August 29, 1997, due to her medical restrictions, she was unable to perform the essential functions of her picker-packer position. (*Id.,* Statement of Undisputed Material Facts ¶¶ 5–7; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 5–7.) Hines alleges, however, that she was capable of performing at least five other jobs listed under Chrysler's picker-packer classification. (Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 23.) Hines also alleges that she applied for and was qualified for positions in other Chrysler facilities around the country. (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 28, 33; *admitted in pertinent part at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 28, 33.)

### 2. *Hines' Requests for Reassignment*

After terminating Hines' employment, Chrysler informed her of the procedures for requesting a hardship transfer under Section 67(b) of the collective bargaining agreement. (*Id.,* Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of

Undisputed Material Facts ¶ 14.). Under Section 67(b) of the collective bargaining agreement, an employee who receives a transfer to another facility retains her seniority at the former plant for twelve months after the transfer, but receives date of entry seniority at the new plant. (*Id.*, Statement of Undisputed Material Facts ¶ 20; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 20.) James Seefeldt, Hines' Union representative and Union President of Local 186, told Hines that if she was interested in transferring to another Chrysler facility, she should write letters to those facilities indicating her interest. (*Id.*, Statement of Undisputed Material Facts ¶¶ 10–11; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 10–11.)

On September 8, 1997, Hines submitted written requests to transfer to Chrysler facilities in Memphis, Tennessee and Huntsville, Alabama. (*Id.*, Statement of Undisputed Material Facts ¶¶ 27–28; *admitted in pertinent part at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 27–28.) Hines also applied specifically for a Retail Credit Specialist position in Quebec, Canada, and a position in the Production Engineer Department in Huntsville, Alabama. (*Id.*, Statement of Undisputed Material Facts ¶ 33; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 33.) In addition, Hines made a verbal request to Johnny Walker, the Manager of the Denver facility, to transfer to any Chrysler facility in the nation. (Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, Ex. 12 [Walker Dep. at 133–138].) Chrysler contends that it did not reassign Hines because (1) she did not follow the proper procedures under the collective bargaining agreement for requesting a hardship transfer, (2) she did not qualify or possess sufficient seniority for reassignment in or

outside of the Denver facility, and/or (3) there were no full-time, permanent positions available at the requested facilities. (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 12, 16, 19, 22–26, 29–31.)

### 3. *Procedural History*

On July 6, 1998, Hines filed a complaint in this court asserting: (1) a federal claim under the ADA; (2) a state-law claim for promissory estoppel; and (3) a state-law claim for willful and wanton breach of contract. (Compl. [filed July 6, 1998] [hereinafter "Compl."].) On October 1, 1998, Chrysler filed its first motion for summary judgment, claiming that (1) Hines is not a qualified individual with a disability within the meaning of the ADA, and (2) Hines' state-law claims are preempted by section 301 of the Labor–Management Relations Act, 29 U.S.C.A. § 185 [hereinafter "LMRA"]. (Br. in Supp. of Def.'s Mot. for Summ. J. [filed Dec. 31, 1998].) On May 20, 1999, I granted defendant's motion for summary judgment, and dismissed this case with prejudice. (Order and Mem. of Decision [filed May 20, 1999] [hereinafter "Order"].) I specifically held that (1) there is a genuine issue of material fact as to whether Hines is disabled under the ADA, (2) Hines cannot perform the essential functions of her picker-packer position, (3) under Tenth Circuit precedent at the time, Chrysler was not obligated to consider reassigning Hines to other positions within or outside the Denver facility as a reasonable accommodation, and (4) Hines' state law claims were preempted by the LMRA. (*Id.*)

On January 21, 1999, Hines filed an appeal with the Tenth Circuit. (Notice of Appeal [filed Jan. 21, 1999].) The only issue raised on appeal was whether the ADA requires Chrysler to consider reassigning Hines to another position as a reasonable accommodation. (Order and J.

at 2 [filed May 19, 2000] [hereinafter "Order and J."].) Relying on a case decided after I issued my May 20, 1999, Order, the Tenth Circuit held that Chrysler was obligated to consider reassignment as a reasonable accommodation. (*Id.* at 3–6.) The Tenth Circuit further held that "there is a genuine issue of material fact as to whether [Chrysler] adequately responded to [Hines'] request for reassignment. We express no opinion on whether, after proper application of the *Midland Brake II* factors, summary judgment will yet be appropriate." (*Id.* at 6.) Accordingly, the Tenth Circuit reversed my May 20, 1999, holding and remanded this case to determine whether a reasonable accommodation in the form of reassignment was possible for Hines had Chrysler adequately responded to Hines' request for reassignment. (*Id.*)

On March 15, 2001, Chrysler moved for summary judgment for a second time. (Def.'s Mot. for Summ. J. [filed Mar. 15, 2001].) Chrysler contends that it is entitled to summary judgment on Hines' remaining ADA claim for reassignment because: (1) Hines is not a qualified individual with a disability under the ADA; (2) Hines did not follow the proper procedures under the collective bargaining agreement for requesting a hardship transfer; (3) Hines failed to identify any vacant positions to which she could have been reassigned; (4) Chrysler engaged in the interactive process in good faith; (5) even if Chrysler did not engage in the interactive process in good faith, Hines cannot show that a reasonable accommodation was possible and would have led to a reassignment; and (6) Chrysler has reasonably accommodated Hines by placing her on layoff and paying her ninety-five percent of her pay after taxes. (Def.'s Br. at 9–20.) Hines argues that Chrysler is not entitled to summary judgment because there is a genuine issue of material fact as to whether Chrysler could have reassigned her to another position as a reasonable accommodation. (Pl.'s Resp. at 17–26.)

## ANALYSIS

### 1. Legal Standard

Under rule 56(c), the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990) ).

## 2. ADA Claim

Title I of the ADA prohibits employers from discriminating against individuals on the basis of disability. 42 U.S.C.A. § 12112(a). Specifically, the statute provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.; see Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 476, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999); *Martin v. Kansas,* 190 F.3d 1120, 1129 (10th Cir.1999); *Hardy v. S.F. Phosphates Ltd.,* 185 F.3d 1076, 1079 (10th Cir.1999); *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.,* 168 F.3d 1228, 1230 (10th Cir.1999). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." 42 U.S.C.A. § 12111(8); *see Poindexter,* 168 F.3d at 1230.

The familiar burden shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to ADA claims. *Taylor v. Pepsi–Cola Co.,* 196 F.3d 1106, 1109 (10th Cir.1999). Accordingly, to state a *prima facie* case under the ADA, Hines must establish that: (1) she is "disabled" within the meaning of the ADA; (2) she is "qualified," that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) she suffered an adverse employment action because of her disability. *See Poindexter,* 168 F.3d at 1230. Once Hines establishes a *prima facie* case, Chrysler must articulate a nondiscriminatory reason for its employment decision. *See Pushkin v. Regents of Univ.*

*of Colo.,* 658 F.2d 1372, 1387 (10th Cir. 1981). Hines at all times bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination based on her disability. *White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747–49 [1993] ).

### A. Disability

█ The ADA defines "disability" broadly as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *See* 42 U.S.C.A. § 12102(2). The determination of whether a plaintiff meets the ADA's first definition of "disability" proceeds in three steps. *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the court determines whether the plaintiff has an impairment. *Id.* Second, the court identifies the life activity upon which the plaintiff relies and determines whether it qualifies as a major life activity. *Id.* Third, "tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity." *Id.* Thus, the Court in *Bragdon* made clear that the questions of (1) whether a claimed affliction amounts to an impairment under the ADA, and (2) whether the identified activity qualifies as a major life activity are questions of law to be resolved by the court. *Id.* The question of whether the plaintiff is "substantially limited" in a major life activity is, however, generally a question of fact. *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305–06 (10th Cir.1999).

█ Because the ADA does not specifically define many of the terms contained therein, the Supreme Court has looked

beyond the statutory language to interpretive regulations which the Equal Employment Opportunity Commission has promulgated pursuant to the ADA and the Rehabilitation Act ("EEOC regulations"). *Bragdon,* 524 U.S. at 631–32, 118 S.Ct. at 2202. Under the EEOC regulations, physical or mental impairments are defined to include:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, ... cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine ....

29 C.F.R. § 1630.2(h) (1998). An impairment need not appear on a specific list of disorders to qualify as a disability, nor must it affect those aspects of a person's life that have a public or economic character. *Bragdon,* 524 U.S. at 633–34, 118 S.Ct. at 2204.

■ Next, the court considers whether the plaintiff has identified a "major life activity" upon which the impairment has an impact. *Id.* The EEOC regulations define a "major life activity" as a " 'a basic activity that the average person in the general population can perform with little or no difficulty.' " *Pack,* 166 F.3d at 1305 (quoting 29 C.F.R. § 1630.2[i] ). The EEOC regulations provide a representative list of activities which qualify as major life activities, "defining [the] term to include 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " *Bragdon,* 524 U.S. at 635, 118 S.Ct. at 2205 (quoting 45 C.F.R. § 84.3[j][2][ii] [1997] ); *see also* 29 C.F.R. § 1630.2(i) (1998). This list is not exhaustive; other major life activities include such activities as sitting, standing, lifting, and reaching. *Pack,* 166 F.3d at 1305 (citing 29 C.F.R. pt. 1630, app.

§ 1630.2[i] [1998] ). In deciding whether a particular activity qualifies as a major life activity, the court asks whether that activity is "significant within the meaning of the ADA, rather than whether the activity is important to the particular individual." *Id.*

■ Finally, the court considers whether the impairment substantially limits the major life activity. Whether an impairment "substantially limits" a major life activity depends on the individual and the impairment. *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1270 (10th Cir.1998). Such determinations are not susceptible to *per se* rules; they must be made on a case-by-case basis. *See* 29 C.F.R. pt. 1630 app., § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). The court considers three factors in assessing whether the individual is "substantially limited" in a major life activity: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); *Sutton v. United Air Lines,* 130 F.3d 893, 900 (10th Cir. 1997), *aff'd,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In addition, the court takes into consideration any corrective or mitigating measures which the plaintiff utilizes, such as medication. *Sutton,* 130 F.3d at 902.

■ Chrysler argues that Hines is not disabled within the meaning of the ADA. (Def.'s Br. at 9–12.) I have already held, however, in my May 20, 1999, Order, that there is a genuine issue of material fact as to whether Hines is disabled under the ADA. (Order at 7–9.) I specifically

held that "[w]hile it is a close question, I conclude that a reasonable jury could find that Hines is substantially limited in the major life activities of lifting, sitting, and standing based upon Dr. Birney's diagnosis and her work restrictions." (*Id.* at 9.) Neither party appealed this part of my May 20, 1999, holding, and, therefore, it is still the law of this case. *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1552–53 (10th Cir. 1991). Any objection Chrysler has on this ruling is waived because it failed to raise its objection on appeal before the Tenth Circuit. *Id.* In addition, Chrysler has not produced any new evidence regarding Hines' disability. Since the facts on record are the same now as they were on May 20, 1999, I adopt the holding in my May 20, 1999, Order regarding Hines' disability today for the reasons stated therein. Accordingly, defendant's motion for summary judgment in this regard is denied.

### B. Qualified Individual

■ Although Hines has raised an issue of fact as to whether she is disabled, she must still show that she is a "qualified individual" under the ADA. *Poindexter,* 168 F.3d at 1230. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires ...." *White,* 45 F.3d at 360 (quoting 42 U.S.C.A. § 12111[8]); *see also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education[,] and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."). The Tenth Circuit applies a two-part analysis to determine whether a person is qualified under the ADA. *See Aldrich,* 146 F.3d at

1271. First, the court determines whether the individual can perform the essential functions of the job. *Id.* Second, if the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable her to perform those functions. *Id.* (citations omitted). Because there is no dispute that Hines was unable to perform the essential functions of her position without accommodation, (Def.'s Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 7), I shall proceed to the second prong of the analysis.

■ Under the ADA, when an individual has a disability, her employer must accommodate the limitations which the disability causes to the extent that the accommodation is "reasonable." *Myers v. Hose,* 50 F.3d 278, 282 (4th Cir.1995). The ADA gives only general guidance for determining whether a particular accommodation is reasonable, stating that reasonable accommodation "may include ... job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." 42 U.S.C.A. 12111(9)(B). Whether a particular accommodation is reasonable depends on the circumstances of the individual case. *Kuehl v. Wal–Mart Stores, Inc.,* 909 F.Supp. 794, 802 (D.Colo.1995).

■ Courts in the Tenth Circuit employ a burden-shifting analysis to determine whether an accommodation is reasonable. *White,* 45 F.3d at 361; *see also Taylor,* 196 F.3d at 1109. Once the plaintiff produces evidence "sufficient to make a facial showing that accommodation is possible, the burden of production

shifts to the employer to present evidence of its inability to accommodate." *Id.* (citations omitted). If the employer presents evidence of its inability to accommodate, the plaintiff "'has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.'" *Id.* (quoting *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 308 [5th Cir.1981]). The plaintiff at all times bears the ultimate burden of persuading the trier of fact that she has been the victim of discrimination based upon her disability. *Id.*

In this case, Hines contends that Chrysler failed to provide her with reasonable accommodations by refusing to reassign her to a vacant position. (Pl.'s Resp. at 24–37.) Specifically, Hines argues that Chrysler should have reassigned her to other picker-packer positions within the Denver facility or other positions in Chrysler facilities outside of Denver. (*Id.*) Chrysler contends that it is entitled to summary judgment on Hines' claim for reassignment because (1) Hines did not follow the proper procedures under the collective bargaining agreement for requesting hardship transfers, (2) Hines failed to identify any vacant positions to which she could have been reassigned, (3) Chrysler engaged in the interactive process in good faith, (4) even if Chrysler did not engage in the interactive process in good faith, Hines cannot show that a reasonable accommodation was possible and would have led to a reassignment, and (5) Chrysler has reasonably accommodated Hines by placing her on layoff and paying her ninety-five percent of her pay after taxes. (Def.'s Br. at 9–20.) Resolution of the parties' arguments requires a thorough discussion of *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir.1999) (en banc), the seminal Tenth Circuit ADA reassignment case.

It is now established law in this circuit that a reasonable accommodation may include reassignment to a vacant position if the employee is qualified for the job and reassignment does not impose an undue burden on the employer. *Smith,* 180 F.3d at 1169; *see also* 42 U.S.C.A. § 12111(9)(B) (defining reasonable accommodation to include possible "reassignment to a vacant position"); *see also* 42 U.S.C.A. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds *or desires* ") (emphasis added). In *Smith,* the court held that an employer has a duty to consider reassignment to a different position when the employee can no longer perform his existing job without reasonable accommodation. *Smith,* 180 F.3d at 1170–71; *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(*o*) ("In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]."). Even if it has been determined that an employee can no longer perform her existing job with reasonable accommodation, however, her right to reassignment is not absolute; rather it is "in all particulars suffused with the limitations that an employer need only take such actions for reassignment as are reasonable under the circumstances." *Id.* at 1171.

In *Smith,* the court outlined several principles for determining whether reassignment is reasonable that are relevant to the case at hand. *Id.* at 1171–1180. First, the court noted that the ADA requires both employee and employer to participate in an interactive process to determine (1) the scope of the employee's disability, (2) any limitations on the employee's ability to work as a result of the disability, and (3) whether the employee

would be qualified, with or without reasonable accommodations, for another position within the company. *Id.* at 1171–74. The court made clear that it is the employee's burden to initiate this interactive process by "providing notice to the employer of [her] disability and any resulting limitations, and expressing a desire for reassignment . . . ." *Id.* at 1171–72. Once the employee provides the employer with appropriate notice, the employer's duties in the interactive process are triggered, and "both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodation, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Id.* The court concluded, however, that "[e]ven if [the employer] failed to fulfill its interactive obligations to help secure a reassignment position, [the employee] will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position." *Id.*

■ Second, the *Smith* court limited reassignment to existing, vacant jobs within the company. *Id.* at 1174–75. In other words, an employer need not create a new position for the disabled employee; nor is an employer required to "bump" another employee in order to reassign a disabled employee to that position. *Id.* For example, "[a]n existing position would not be truly vacant, even though it is not presently filled by an existing employee, if under a collective bargaining agreement other employees have a vested priority right to such vacant positions." *Id.* at 1175. A vacant position, however, "includes not only positions that are at the moment vacant, but also includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future." *Id.* at 1175 (citations omitted).

■ Finally, the court noted that the employer is free to choose the reassignment that is to be offered to a disabled employee. *Id.* at 1177; *see also Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1137 (8th Cir.1999) (en banc) ("If more than one accommodation would allow the individual to perform the essential functions of the position, the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.") (internal quotation marks and citations omitted); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285–86 (11th Cir.1997) ("Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of [her] choice, but only a reasonable accommodation."). If the disabled employee rejects that reassignment, the employer is under no obligation to continue offering other reassignments. *Smith,* 180 F.3d at 1177 ("The ADA does not entitle an employee to a free ranging or perpetual right to a new position within the company.") Consequently, "[o]nce the employer has offered such a reassignment, its duties have been discharged." *Id.* (citations omitted).

Tying together the principles outlined above with the familiar burden shifting analysis established in *McDonnell Douglas,* the *Smith* court concluded that to state a *prima facie* case of disability discrimination based on an employer's alleged failure to reassign an employee to a vacant position within the company, the employee must show that:

(1) [t]he employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;

(2) [t]he preferred option of accommodation within the employee's existing job cannot reasonably be accomplished;

(3) [t]he employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;

(4) [t]he employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and

(5) [t]he employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

*Id.* at 1179. Once the employee produces evidence sufficient to make a facial showing on her *prima facie* case, the burden of production shifts to Chrysler to present evidence either (1) conclusively rebutting one or more elements of the employee's *prima facie* case, or (2) establishing an affirmative defense, such as *undue hardship* or one of the other affirmative defenses available to employers. *Id.* If the employer accomplishes either of the above, summary judgment in its favor will be appropriate unless the employee "presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitating any challenged elements of . . . her *prima facie* case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.*

Chrysler contends that Hines cannot succeed on the third and fourth prongs of her *prima facie* case. (Def.'s Br. at 12–

20.) Specifically, Chrysler contends that it is entitled to summary judgment because (1) under the third prong, Hines failed to follow the proper procedures in the collective bargaining agreement for requesting hardship transfers, failed to identify any vacant positions to which she could have been reassigned, and Chrysler engaged in the interactive process in good faith, and (2) under the fourth prong, even if Chrysler did not engage in the interactive process in good faith, Hines cannot show that a reasonable accommodation was possible and would have led to a reassignment. (*Id.*) Chrysler also argues that it has reasonably accommodated Hines by placing her on layoff and paying her ninety-five percent of her pay after taxes. (Def.'s Br. at 9–20.) I address each argument in turn.

### i. *Interactive Process*

 Chrysler contends that Hines did not initiate or participate in good faith in the interactive process. (*Id.* at 12–18.) Chrysler also argues that it did participate in good faith in the interactive process. (*Id.*) Under the third prong of a *prima facie* failure to reassign case, the employee must produce evidence that she engaged in an interactive process with the employer. *Smith,* 180 F.3d at 1171–74. The employee must initiate the interactive process by notifying the employer of her disability, limitations resulting from her disability, and her desire to be reassigned. *Id.* Although it is the employee's burden to initiate this interactive process, once initiated, the interactive process requires good faith communications from both employee and employer. *Id.*

 Initially, it is worth noting that the Tenth Circuit, in its May 19, 2000, Order and Judgment, already concluded that "there is a genuine issue of material fact as to whether [Chrysler] adequately responded to [Hines'] request for reassign-

ment." (Order and J. at 6.) Implicit in this holding is the Tenth Circuit's conclusion that Hines satisfied her burden of initiating the interactive process with Chrysler. Accordingly, I find that the Tenth Circuit has already directed a finding in this case that (1) Hines provided Chrysler with adequate notice of her disability, limitations, and desire for reassignment, and (2) that there is a genuine issue of material fact as to whether Chrysler participated in the interactive process with Hines in good faith.

Nevertheless, even if the Tenth Circuit did not intend to make such findings in its May 19, 2000, Order and Judgment, I find today that the undisputed evidence on record conclusively establishes that (1) Hines notified Chrysler of her disability, resulting limitations, and desire for reassignment, (2) Hines, in good faith, participated in the interactive process to identify vacant positions within Chrysler for which she was qualified, and (3) there is a genuine issue of material fact as to whether Chrysler participated in good faith in the interactive process to identify vacant positions for which Hines was qualified. On August 29, 1997, it is undisputed that Hines notified Chrysler of her disability and the resulting limitations imposed by her doctor as a result of her disability. (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 4–11.) Later the same day, when Walker met with Hines to notify her of her employment termination, it is undisputed that Hines verbally requested reassignment to a vacant position. (Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, Ex. 12 [Walker Dep. at 133–138].) Furthermore, on September 8, 1997, it is undisputed that Hines submitted written requests to Walker and Seefeldt to transfer to Chrysler facilities in Memphis, Tennessee and Huntsville, Alabama. (*Id.*, Ex. 4 [Alabama Transfer], Ex.

5 [Tennessee Transfer].) Finally, it is undisputed that Hines specifically applied for a Retail Credit Specialist position in Quebec, Canada, and a position in the Production Engineer Department in Huntsville, Alabama. (*Id.*, Statement of Undisputed Material Facts ¶ 33; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 33.) Based on this evidence, it could not be more clear to me that Hines satisfied her burden of initiating and participating in the interactive process in good faith with Chrysler. Accordingly, Chrysler's motion for summary judgment based on Hines' alleged failure to initiate and participate in the interactive process in good faith is denied.

Despite Hines' numerous requests for reassignment and diligent search for vacant positions, Chrysler contends that Hines did not engage in the interactive process in good faith because (1) Hines did not follow the proper procedures under the collective bargaining agreement for requesting hardship transfers, and (2) Hines failed to identify any vacant positions for which she was qualified at the time she requested reassignment. (Def.'s Br. at 9–19.) Chrysler's arguments error as a matter of law and fact.

### a. *Duty to Request Reassignment*

 With respect to Chrysler's argument that Hines was required to follow the procedures for hardship transfers under the collective bargaining agreement, Chrysler misrepresents the law and facts of this case. The Tenth Circuit, in *Smith,* made clear that an employee "need not use magic words" when requesting reassignment. *Smith,* 180 F.3d at 1172. Instead, an employee must only convey to the employer a desire to remain with the company despite her disability and limitations. *Id.; Taylor v. Phoenixville Sch. Dist.,* 174 F.3d 142, 158 (3d Cir.1999)[1] ("[t]o request

---

**1.** In *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296 (3d Cir.1999) (*"Phoenixville II"*), the

accommodation, an individual may use plain English and need not mention the ADA"); *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 694 (7th Cir.1998) ("[a] request as straightforward as asking for continued employment is a sufficient request for accommodation"). Accordingly, as a matter of law, Hines was not obligated to follow the procedures under the collective bargaining agreement for reassignment. The collective bargaining agreement governs requests from Chrysler employees for hardship transfers to other Chrysler facilities. These procedures do not govern this situation, which does not involve a hardship request, nor do they supercede ADA requirements.

■■■ Furthermore, Chrysler's argument misrepresents the facts of this case. Robert Sarzyenski, an Employee Programs Specialist in the Office of Corporate Union Relations at the Denver facility, admitted in his deposition that Hines' written requests for transfer to Memphis and Huntsville would have been accepted as hardship transfer requests under the collective bargaining agreement even though they did not strictly comply with the procedures outlined therein.[2] (Pl.'s Resp., Ex. 8 [Sarzyenski Dep. at 64].) In addition, Seefeldt stated in his deposition that

Hines did "everything she needed to do, to fulfill her obligation to make a request for a transfer under [the collective bargaining agreement for] a hardship transfer." *(Id.*, Ex. 6 [Seefeldt Dep. at 51–52].) Seefeldt further stated that it was Walker's responsibility to forward Hines' transfer request to Mark Dunning, the Chrysler employee in charge of handling transfer requests in September 1997. (*Id.*, Ex. 6 [Seefeldt Dep. at 51–52].) Finally, it is worth noting that no one from Chrysler told Hines she had to fill out a special hardship transfer request form for her request to be reviewed, not even after she submitted her letters for transfer in September 1997. (*Id.*, Ex. 10 [Hines Aff. ¶ 4].) Accordingly, even if Hines was obligated to follow the procedures in the collective bargaining agreement for hardship transfers to satisfy her burden of initiating and participating in the interactive process in good faith, I find that Hines has created a genuine issue of material fact as to whether she adequately complied with those procedures by submitting written requests for reassignment to Walker and Seefeldt.

In sum, I find that Hines provided adequate notice to Chrysler of her disability, resulting limitations, and desire to be reas-

---

Third Circuit vacated its opinion in *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142 (3d Cir. 1999) (*"Phoenixville I "*). In *Phoenixville II*, however, the court stated that "our previous discussion on the interactive process is unaffected; therefore, we have incorporated it unchanged in this opinion." *Phoenixville II*, 184 F.3d at 302. Because the actual discussion of the interactive process is found in *Phoenixville I,* however, I will continue to cite to the first opinion throughout the rest of this Order.

2. Although Mark Dunning was in charge of handling hardship transfer requests at the time Hines submitted her written requests to transfer in September 1997, the fact that Sarzyenski would have accepted Hines' written requests to transfer as a "hardship transfer"

under the collective bargaining agreement is still relevant because Sarzyenski stated in his deposition that when he replaced Dunning in mid–1998 and assumed responsibility for handling hardship transfer requests under the collective bargaining agreement, all of Dunning's files were given to him. (Pl.'s Resp., Ex. 8 [Sarzyenski Dep. at 78–79].) Accordingly, at the very least, Sarzyenski would have been responsible for reviewing Hines' transfer requests at that time. Furthermore, as Sarzyenski is currently in charge of handling hardship transfer requests under the collective bargaining agreement on behalf of Chrysler, his opinion as to what constitutes a hardship transfer request is relevant to determining whether Hines actually complied with the procedures in the collective bargaining agreement for hardship transfers.

signed to another position despite her disability. Accordingly, under *Smith*, Hines' notice triggered Chrysler's duties in the interactive process to "determine whether [Hines] would be qualified, with or without reasonable accommodations, for another job within [Chrysler] and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Smith*, 180 F.3d at 1172.

### b. Duty to Identify Vacant Positions

■ With respect to Chrysler's argument that Hines failed to identify any vacant positions to which she could have been reassigned, Chrysler again misrepresents the law and facts of this case. In *Smith*, the Tenth Circuit stated that "the exact shape of th[e] interactive process will necessarily vary from situation to situation and no rules of universal application can be articulated." *Id.* at 1173. The court elaborated:

[f]or example, in a small company an employee might be reasonably expected to know what other jobs are available for which he or she would be qualified to perform. On the other hand, in larger

companies or companies where the employee does not have ready access to information regarding available jobs, it might be reasonable to require the employer to identify jobs that the employer reasonably concludes are appropriate for reassignment consideration.

*Id.* Applying these principles to this case, it is clear that Chrysler was in a better position to identify vacant positions than Hines. Chrysler is a large corporation with offices throughout the entire country. While it may be reasonable to expect Hines to identify vacant positions in Chrysler's Denver facility, it certainly is not reasonable to expect Hines to identify vacant positions in all of Chrysler facilities.[3] Accordingly, to the extent that Chrysler argues that Hines carried the burden of identifying vacant positions during the interactive process by herself, Chrysler's argument is incorrect as a matter of law.[4]

Chrysler argues that Hines carried the burden of identifying vacant positions during the interactive process by herself because she had access to information re-

---

**3.** Neither party addressed the distinction between local, vacant positions and national, vacant positions. Instead, both parties argue this issue as though it is an all-or-nothing determination; either Hines or Chrysler was responsible for identifying *all* vacant positions at Chrysler, irrespective of their location, whether local or national. To the extent that the parties coin this as an all-or-nothing issue, I disagree. I find that the issue of whether Hines or Chrysler was obligated to identify vacant positions locally is a different issue than whether Hines or Chrysler was obligated to identify vacant positions nationally. Furthermore, as I already indicated, I find that, under the circumstances of this case, it is reasonable to place the duty of identifying local, vacant positions on Hines and national, vacant positions on Chrysler.

**4.** I also find that the Tenth Circuit's decision in this case supports my conclusion. (Order and J. at 4–6.) On appeal, Chrysler argued

that Hines was obligated to identify vacant positions in the interactive process, and because she allegedly failed to do so, it was entitled to summary judgment. (*Id.*) The Tenth Circuit rejected this argument, stating that Chrysler "presumes the preceding step in the process, i.e., that the employee requested an accommodation 'by reassignment to a vacant position, which the *employee may request the employer identify* through the interactive process.' " (*Id.* quoting *Smith*, 180 F.3d at 1179.) I interpret the Tenth Circuit's statement to mean that, if Hines had requested Chrysler to identify vacant positions, Chrysler would have been obligated to identify vacant positions in good faith. Since it is undisputed that Hines asked Walker and Seefeldt to identify vacant positions in any facility nationwide for which she was qualified, I find, consistent with the Tenth Circuit's opinion in this case, it was Chrysler's responsibility to identify vacant positions for which Hines was qualified.

garding vacant positions at Chrysler. (Def.'s Br. at 12–19.) Chrysler alleges that Hines had access to information regarding vacant positions through the Careers Menu, a computer database system containing information about *certain types* of vacant positions at Chrysler facilities nationwide. (*Id.*) I find it difficult to believe that Chrysler makes this argument in good faith given that it has admitted that Hines was not qualified for "99.8% of the jobs on the [Careers Menu]." (Pl.'s Resp., Ex. 12 [Walker Dep. at 163].) The Careers Menu is predominantly used by salaried, management employees because nearly all of the jobs listed on the system require a college degree. (*Id.*, Ex. 12 [Walker Dep. at 163].) Hines was neither salaried, nor a management employee, and she does not have a college degree. (*Id.*, Ex. 12 [Walker Dep. at 163].) Walker knew this when he told Hines to use the Careers Menu to look for a vacant position. (*Id.*, Ex. 12 [Walker Dep. at 163].) Furthermore, Hines did not have a password to use the Careers Menu, and the only time she was able to use the Careers Menu was when her supervisor logged her on under his password. (*Id.*, Ex. 11 [Whitney Dep. at 88–93].) Clearly, the Careers Menu was not a useful tool for someone in Hines' position. Accordingly, contrary to Chrysler's argument, I conclude that Hines did not have access to information regarding relevant vacant positions at Chrysler through the Careers Menu.

Chrysler also argues that Hines had access to information regarding vacant positions at Chrysler because she belonged to the Union. (Def.'s Br. at 17–18.) Chrysler does not offer any explanation as to how Hines' membership with the Union provided her access to information regarding vacant positions at Chrysler. (*Id.*) Chrysler merely assumes that, had Hines been more assertive in seeking help from her Union, she would have obtained more information about vacant positions at Chrysler. (*Id.*)

Chrysler's argument, once again, errs as a matter of law and fact. First, as a matter of law, the Tenth Circuit held that, once an employee initiates the interactive process with proper notice, the employer is obligated to assist the employee in identifying vacant positions for which the employee would be qualified, with or without reasonable accommodations. *Smith*, 180 F.3d at 1172. Accordingly, as a matter of law, once Hines provided Chrysler with proper notice, as I have already determined she did, Chrysler had an affirmative duty to assist Hines in identifying vacant positions at Chrysler. *Id.* Chrysler cannot shirk its responsibilities under the ADA simply because its employees are represented by the Union. Second, as a matter of fact, Hines did contact her Union. The record is replete with evidence that Hines was in regular contact with Seefeldt and others from the Union regarding the possibility of her transferring to another Chrysler facility. (Pl.'s Resp., Ex. 6 [Seefeldt Dep. at 49–56].) Accordingly, even if Hines' membership with the Union did provide her access to information regarding vacant positions at Chrysler, I find that Hines took advantage of all the resources available to her through her Union.

In sum, I reject Chrysler's argument that Hines had access to information regarding all vacant positions at Chrysler, and find that Chrysler was at least responsible for identifying national, vacant positions for which Hines was qualified. Nevertheless, I further find that, even if Hines was solely obligated to identify vacant jobs—either locally or nationally—during the interactive process to satisfy the good faith requirement outlined in *Smith*, there is more than adequate evidence on record that Hines did, in fact, (1) identify vacant

positions in the Denver facility for which she was qualified, (2) identify and apply for vacant positions in Quebec and Huntsville, and (3) search diligently for vacant positions in Chrysler's facilities nationwide.

It is undisputed that Chrysler offers thirteen jobs under the picker-packer classification. (Def.'s Reply, Ex. M [Walker Aff., Attach A (Seniority Jobs)].) Although Hines could not perform the functions of the picker-packer position she held at Chrysler prior to her injury, it is undisputed that Hines was capable of performing the work required of at least five other picker-packer positions offered by Chrysler after her injury. (Pl.'s Resp., Ex. 6 [Sarzyenski Dep. at 32], Ex. 11 [Whitney Dep. at 80–81, 101].) Michael Whitney, Hines' supervisor, stated in his deposition that, even with Hines' medical restrictions, she was capable of performing work required of other picker-packer positions such as Janitor, Stacker Operator, Exception Clerk, Dispatcher, and Back Order Clerk.[5] (*Id.*, Ex. 11 [Whitney Dep. at 98–101].)

It is also undisputed that Hines identified and applied for vacant positions in Memphis, Quebec, and Huntsville. On September 8, 1997, Hines submitted written requests to transfer to Chrysler facilities in Memphis and Huntsville. (Pl.'s Resp., Ex.4 [Huntsville Transfer], Ex. 5 [Memphis Transfer].) Sarzyenski testified in his deposition that (1) between August 1997 and June 1998, Chrysler hired four picker-packers in Memphis, (2) after June 1998, Chrysler hired another eight picker-packers in Memphis, and (3) after June 1998, Chrysler hired eighty-five full-time, hourly employees in Huntsville. (*Id.*, Ex. 8 [Sarzyenski Dep. at 75–77].) Hines also applied specifically for a Retail Credit Specialist position in Quebec, and a position in the Production Engineer Department in Huntsville. (Def.'s Br., Statement of Undisputed Material Facts ¶ 33; *admitted at* Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 33.) In addition, Hines made verbal requests to Walker to transfer to *any* Chrysler facility in the nation. (Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, Ex. 12 [Walker Dep. at 133–138].) Finally, it is undisputed that Hines contacted the Union and her supervisors for assistance in finding a vacant position in any Chrysler facility in the nation, and attempted to find vacant positions on the Careers Menu (without knowing of course that she would not be qualified for any of these jobs). (*Id.*, Ex. 10 [Hines Aff. ¶¶ 2–10], Ex. 12 [Walker Dep. at 133–138].) Accordingly, I find that, even if Hines was required to identify vacant positions—both locally and nationally—in the interactive process to withstand summary judgment, she clearly satisfied this requirement. Chrysler's motion for summary judgment based on its argument that Hines did not engage in the interactive process in good faith is, therefore, denied.

---

**5.** Chrysler contends that Hines mischaracterizes Whitney's deposition testimony. (Def.'s Reply, Resp. Concerning Pl.'s Statement of Additional Disputed Facts ¶ 2.) Chrysler argues that Whitney actually testified that Hines was not qualified for picker-packer positions such as Janitor, Stacker Operator, Exception Clerk, Dispatcher, and Back Order Clerk because her medical restrictions were permanent, rather than temporary. (*Id.*) Chrysler's characterization of Whitney's deposition testimony, however, is misleading. Whitney testified that, given Hines' medical restrictions, whether permanent or not, Hines was *capable* of doing the work required of a Janitor, Stacker Operator, Exception Clerk, Dispatcher, and Back Order Clerk, but that, given Chrysler's policy not to employ individuals' with permanent work restrictions, Hines was not *eligible* for those jobs. (Pl.'s Resp., Ex. 11 [Whitney Dep. at 98–101].) Accordingly, I reject Chrysler's characterization of Whitney's testimony.

### c. Chrysler's Duty of Good Faith in the Interactive Process

On the other hand, Chrysler wholly failed to participate in good faith with Hines in the interactive process to identify vacant positions—locally or nationally—for which Hines was qualified. Chrysler did not attempt to identify a single vacant position at Chrysler because it believed, and apparently still believes, that Hines was solely responsible for identifying both local and national vacant positions. As I have already noted above, however, Chrysler was wrong to assume that Hines was solely responsible for identifying vacant positions at Chrysler. Chrysler argues that, even if it did have a responsibility to identify vacant positions, it participated in good faith in this process when it referred Hines to the Careers Menu and her local Union representative for assistance. Again, for the reasons stated above, Chrysler's arguments are without merit.

There is simply no evidence on record that anyone from Chrysler searched for a vacant position for Hines, let alone identified a vacant position for her consideration. At the very least, there is a genuine issue of material fact as to whether Chrysler participated in good faith in the interactive process. In fact, the record is replete with evidence that it may be Chrysler's *policy* not to reassign an employee with permanent physical restrictions. Whitney testified that Chrysler has a policy of discharging individuals with permanent medical restrictions, regardless of their ability to perform other jobs at Chrysler. (*Id.*, Ex. 11 [Whitney Dep. at 101].) Whitney clearly stated in his deposition that, even though Hines was qualified—in the sense that she was capable of doing the work required—for the positions of Janitor, Stacker Operator, Exception Clerk, Dispatcher, and Back Order Clerk, Hines' employment was terminated, nonetheless, because "[t]hat was just our prac-

tice in Denver [to discharge employees with permanent work restrictions]." (*Id.*, Ex. 11 [Whitney Dep. at 101].) Seefeldt also stated in his deposition that, "when [her medical restrictions] said 'permanent,' I told [Hines] . . .: Pam, you know they're going to lay you off unable, *automatically.*" (*Id.*, Ex. 6 [Seefeldt Dep. at 32] [emphasis added].) Based on the record before me today, it appears as though Chrysler may have a policy of discharging employees who have permanent work restrictions, regardless of their ability to perform other vacant positions at Chrysler.

Clearly, this policy, if it in fact exists, is contrary to the goals established by the ADA. In *Hendricks–Robinson*, the Seventh Circuit held that a policy which summarily denies permanently restricted employees reassignment to nonproduction jobs, thereby limiting reassignment to production jobs only, violates the ADA. *Id.*, 154 F.3d at 694–96. The court reasoned that an employer is "required 'to identify the *full range* of alternative positions' available and 'to consider transferring the employee to *any* of these other jobs, including those that would represent a demotion.'" *Id.* at 695 (quoting *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 678 (7th Cir.1998) ). Similarly, in this case, there is a genuine issue of material fact as to whether Chrysler has a policy which summarily denies employees with permanent work restrictions reassignment to *any* vacant position at Chrysler. Not only would this policy have the effect of denying qualified disabled employees access to the interactive process outlined in *Smith*, it would inevitably lead to violations of the ADA. This is so because qualified individuals with a disability under the ADA will often have permanent work restrictions. Accordingly, not only do I find that there is a genuine issue of material fact as to whether Chrysler participated in

the interactive process with Hines in good faith, I also find that there is a genuine issue of material fact as to whether Chrysler has a policy which summarily denies permanently restricted employees reassignment to any vacant position.[6]

It is unclear, however, whether Chrysler's failure to participate in the interactive process carries any legal significance. Hines argues that once I determine there is a genuine issue of material fact as to whether Chrysler participated in the interactive process in good faith, I must deny Chrysler's motion for summary judgment, obviating any need to proceed to an analysis of the fourth prong of her *prima facie* case. (Pl.'s Resp. at 27–35.) Chrysler argues that, even if it did not participate in the interactive process in good faith, I must proceed to an analysis of the fourth prong because it is still entitled to summary judgment if Hines cannot identify vacant positions which existed at the time she requested reassignment such that reassignment would have been possible. (Def.'s Br. at 18–19; Def.'s Reply at 24–25.) There is support for both positions because the Tenth Circuit has not yet clearly articulated the consequences, if any, an employer suffers for failing to participate in the interactive process in good faith.

Upon a thorough analysis of *Smith* and the parties' arguments, I conclude that *Smith* stands for the principle that an employer is not entitled to summary judgment if there is a genuine dispute as to whether it participated in good faith in the interactive process, unless the interactive process is determined to be unnecessary because the accommodation sought was either unreasonable as a matter of law, obvious, or impossible. In

*Smith*, the Tenth Circuit clearly stated that, "summary judgment would be premature if there is a genuine dispute regarding whether [the employer] participated in good faith in attempting to secure a reassignment position for [the employee] as part of its duty to offer a reasonable accommodation to [the employee]." *Id.*, 180 F.3d at 1174. The court elaborated, "it should be emphasized that here we are only addressing [the employee's] ability to withstand summary judgment." *Id.* Accordingly, although Hines must succeed on all five prongs of her *prima facie* case *at trial*, the Tenth Circuit clearly stated that an employee withstands *summary judgment* if she can prove that there is a genuine issue of material fact as to whether the employer failed to participate in the interactive process in good faith. *Id.*

The court also indicated, however, that an employer may be entitled to summary judgment even if it did not participate in the interactive process in good faith, if a court determines that the interactive process was not necessary because the accommodation sought was unreasonable as a matter of law, obvious, or impossible. *Smith*, 180 F.3d at 1172. In a footnote, the court stated that, "[a]lthough there may be occasions where a reasonable accommodation can be determined without an interactive process, typically the interactive process will be indispensable." *Id.* at 1172 n. 10. Although the court did not set forth specific examples of when the interactive process is unnecessary, the court cited two cases that lend guidance on this issue. Specifically, the court cited with approval *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142 (3d Cir.1999) and *Willis v. Conopco, Inc.*, 108 F.3d 282 (11th

---

6. That Chrysler's reassignment policy may need some attention is further supported by Dunning's and Sarzyenski's admission that they never received training concerning the

ADA, and are not familiar with the requirements of the ADA. (*Id.*, Ex. 8 [Sarzyenski Dep. at 67–75], Ex. 17 [Dunning Dep. at 16–18].)

Cir.1997). *Id.* at 1174. I address each case in turn.

In *Phoenixville School District*, the Third Circuit held that the employer was not entitled to summary judgment because there was a genuine dispute as to whether the employer participated in good faith in the interactive process. *Phoenixville Sch. Dist.*, 174 F.3d at 164. The court, however, in two footnotes, limited its holding to cases in which the interactive process was determined to be necessary. *Id.* at 162 n. 8 and 164 n. 10. The court noted that the interactive process is not necessary in cases where the accommodation requested is unreasonable as a matter of law. *Id.* at 162 n. 8. The court also noted that the interactive process is not necessary if the accommodation is obvious or impossible. *Id.* at 164 n. 10. Accordingly, the court crafted an exception to the rule that an employer is not entitled to summary judgment if it did not participate in good faith in the interactive process for extreme cases in which the interactive process is not necessary. *Id.*

Similarly, in *Willis*, the Eleventh Circuit held that when accommodation is impossible, it is irrelevant to determine what the duties were in the interactive process. *Willis*, 108 F.3d at 287 In *Willis*, the plaintiff's doctor gave her employer a letter stating that "[t]here is nowhere within [the employer's] building that [the plaintiff] would be safe ... I reiterate: she should not be working in [the employer's] building." *Willis*, 108 F.3d at 286–87. Relying on the plaintiff's own evidence that she could not work *anywhere* in the employer's building, the Eleventh Circuit held that, because an accommodation, reasonable or otherwise, was not possible, summary judgment in the employer's favor was appropriate. *Id.* Notably, the court did not find that the employer did not participate in the interactive process in good faith. Instead, the court held that, regardless of the responsibilities involved in the interactive process, there simply were no accommodations possible because the plaintiff's own doctor testified that she could not work anywhere in the building. *Id.*

I find that the Tenth Circuit cited *Phoenixville School District* and *Willis* to instruct lower courts on the issue of whether an employer is entitled to summary judgment even if there is a genuine dispute as to whether the employer participated in the interactive process in good faith. Accordingly, consistent with *Phoenixville School District* and *Willis*, the law in this circuit is that, if a court determines there is a genuine issue of material fact as to whether the employer participated in the interactive process in good faith, summary judgment for the employer must be denied, unless the court determines that the interactive process was unnecessary because the accommodation sought by the employee was unreasonable as a matter of law, obvious, or impossible. Applying this principle to the facts of this case, I find that Chrysler has not argued that the interactive process was unnecessary because the accommodation Hines sought was unreasonable as a matter of law, obvious, or impossible. Furthermore, I find that, even if Chrysler had made this argument, there is no support for it on the record. This is precisely the kind of case in which the interactive process is mandatory. Hines sought reassignment to a vacant position in the Denver facility, Memphis, Huntsville, and Quebec. Unlike the plaintiff's request in *Willis*, Hines and Chrysler could not have determined whether Hines' request was possible, let alone reasonable, without working together in an effort to determine the limitations of Hines' disability and the vacant positions that Hines would qualify for given those limitations. Accordingly, I find that Hines' request was not unreasonable as a matter of law, obvious, or impossible. As a result, Chrysler

was obligated to participate in the interactive process in good faith, and its failure to do so prevents summary judgment in its favor.

Chrysler argues that the following sentence in *Smith* supports its position that *Smith* stands for the proposition that an employer is still entitled to summary judgment if the employee cannot succeed on the fourth prong of the *prima facie* case:

> Even if [the employer] failed to fulfill its interactive obligations to help secure a reassignment position, [the employee] will not be entitled to *recovery* unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position. *See Phoenixville*, 174 F.3d 142 ("To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate," inter alia, "the employee could have been reasonably accommodated but for the employer's lack of good faith."); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (holding that the employer's failure to interact with the employee does not *per se* insulate the employee from losing on summary judgment because the employee must still prove that a reasonable accommodation could have been made).

*Id.* (emphasis added). Chrysler reads this sentence as meaning that an employee must prove, at the summary judgment stage, that there is a genuine issue of material fact as to whether a reassignment position was possible, even if the employer did not participate in the interactive process in good faith. (Def.'s Br. at 18–19; Def.'s Reply at 24–25.) Chrysler's interpretation of this sentence, however, is not persuasive. The court does not mention summary judgment, but instead refers to the employee's right to "recovery." The use of the word "recovery" leaves open the possibility that the Tenth Circuit intended to mean that, if a court finds that the interactive process was necessary, and there is a genuine issue of material fact as to whether the employer participated in good faith in the interactive process, the subsequent determination of whether a reasonable accommodation would have existed, had the employer participated in good faith in the interactive process, is inherently a question of fact that is not properly decided by the court on summary judgment. As I have already indicated, this interpretation is consistent with other portions of the court's decision in *Smith*.

Chrysler also supports its interpretation of *Smith* by noting that, in the paragraph above, the court cited *Willis* as standing for the proposition that an employer's failure to interact with the employee does not *per se* insulate the employee from losing on summary judgment because the employee must still prove that a reasonable accommodation could have been made. *Id.* at 1174 (citing *Willis*, 108 F.3d at 285). Chrysler also supports its interpretation of *Smith* by noting that the fourth prong of the *prima facie* case expressly requires that the employee, at the time of the summary judgment proceeding, identify vacant positions that existed at the time reassignment was requested. On its face, the court's parenthetical citation of *Willis* and its statement of the fourth prong of the *prima facie* case seems to support Chrysler's interpretation of *Smith*. A thorough review of the cases, however, reveals that it does not.

First, as I have already noted, the *Smith* court clearly stated elsewhere in its opinion that "summary judgment would be premature if there is a genuine dispute regarding whether [the employer] participated in good faith in attempting to secure a reassignment position ...." *Id.*, 180 F.3d at 1174. Accordingly, at best, Chrysler can only argue that the Tenth Circuit

contradicted itself in *Smith* by stating at one place in the opinion that summary judgment is premature if the employer failed to participate in the interactive process in good faith, while stating elsewhere that the employer's failure to interact does not insulate the employee from summary judgment *per se*. Rather than attempt to resolve the allegedly inconsistent statements made in *Smith*, however, Chrysler instead relies solely on the statement that supports its position while ignoring the statement that does not support its position. Clearly, Chrysler's selective process of interpretation does not render a thorough analysis of the court's opinion in *Smith*.

Second, contrary to Chrysler's position, the Tenth Circuit did not contradict itself in *Smith* when it cited *Willis*. As I have already noted, several courts have held, consistent with the Eleventh Circuit's decision in *Willis*, that a genuine dispute as to whether the employer participated in the interactive process in good faith will prevent summary judgment in the employer's favor, *while also noting* that there may be extreme cases in which a reasonable accommodation can be determined without an interactive process. *See Smith*, 180 F.3d at 1172 n. 10; *Phoenixville Sch. Dist.*, 174 F.3d at 162 n. 10; *Willis*, 108 F.3d at 287. In *Smith*, the court cited *Willis*, without any discussion of the case whatsoever, as standing for the proposition that an employer's failure to interact with the employee does not *per se* insulate the employee from losing on summary judgment. *Smith*, 180 F.3d at 1174 (citing *Willis*, 108 F.3d at 287) (emphasis added). This is not inconsistent with the principle I have outlined in this case because *Willis* falls into the category of cases in which the interactive process was determined to be unnecessary because the accommodation sought was impossible. *Willis*, 108 F.3d at 287. Accordingly, by citing *Willis*, the Tenth Circuit merely noted what many other cir-

cuits have also noted: that an employer who does not participate in the interactive process in good faith is not entitled to summary judgment, unless the interactive process was unnecessary because the accommodation sought was unreasonable as a matter of law, obvious, or impossible.

My interpretation of *Smith* is also supported by common sense. In *Smith*, the Tenth Circuit clearly stated that the ADA often requires affirmative action on the part of the employer. *Id.*, 180 F.3d at 1164 ("the core word 'assign' implies some active effort on the part of the employer"); *id.* at 1167 (stating that an employee has a "right ... to the consideration process leading up to potential reassignment"); *id.* at 1172 (stating that an employer has "an *obligation* to proceed in a reasonable interactive manner to determine whether the employee would be qualified ... for another job within the company"). Common sense dictates that, if there is no mechanism in place to enforce the employer's duties in the interactive process, the ADA's requirements will be meaningless. Accordingly, it makes sense that, if an employer fails to participate in the interactive process in good faith when the ADA requires the employer to do so, the employer should not be entitled to summary judgment.

The Third Circuit recognized this problem in *Phoenixville School District*. In *Phoenixville School District*, the court stated that "the interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, post-termination litigation, try to knock down every specific accommodation as too burdensome." *Id.* 174 F.3d at 161. The court further elaborated:

An employer who acted in bad faith would be in essentially the same, if not

better, position than one who participated; that is, both employers would be arguing that the employee failed to find an accommodation making him or her able to perform the essential function of the job. The less the employer participated, the easier this would become, and as a result, the requirement that employers participate in the interactive process would be *toothless.*

*Id.* at 163 (emphasis added). I agree with the Third Circuit's analysis of the interactive process. If I proceed to an analysis of the fourth prong of Hines' *prima facie* case, even though there is a genuine dispute as to whether Chrysler participated in the interactive process in good faith, the ADA's requirements under the interactive process would be meaningless.

The holding in *Smith,* as interpreted in this Order, has the effect of sending cases to a jury when the court determines that the interactive process was necessary and there is a genuine dispute as to whether the employer participated in good faith in the interactive process. This result is consistent with the general principle that a jury is responsible for resolving questions of fact because, when an employer fails to participate in the interactive process as required under the ADA, the determination of whether a reasonable accommodation existed at the time the employee requested accommodation will necessarily involve some amount of speculation as to how the employer's failure to cooperate with the employee affected the employee's inability to identify a reasonable accommodation. *See Phoenixville School District,* 174 F.3d at 163 ("... the jury is entitled to bear in mind that had the employer participated in good faith, there may have been other, unmentioned possible accommodations."). Since a determination of the fourth prong, in cases where the employer did not participate in good faith in the interactive process, will be made with fewer

facts known than in cases where the employer did participate in good faith in the interactive process, it is best for a jury to evaluate the fourth prong in the former case and a court in the latter.

Finally, fairness to the parties also supports my interpretation of *Smith.* If an employer is entitled to summary judgment because the employee cannot prove that a reasonable accommodation existed at the time accommodation was requested, even though the employer impeded the employee's ability to identify a reasonable accommodation by failing to participate in the interactive process in good faith, not only would the employer successfully evade the ADA's requirements, it would benefit from its conduct. This could not be what Congress intended, nor the Tenth Circuit in *Smith.* On the other hand, it is equally true that Congress did not intend to create a cause of action against employers for "failure to interact in good faith." *Willis,* 108 F.3d at 285. Accordingly, precluding the employer from obtaining summary judgment when it fails to participate in the interactive process in good faith, while also requiring the employee to prove, at trial, that a reasonable accommodation existed at the time accommodation was requested, strikes a proper balance between the employer's duties under the interactive process and its ultimate liability under the ADA.

In sum, under the facts of this case, I find that Chrysler was obligated to participate in the interactive process in good faith, that there is a genuine dispute as to whether Chrysler participated in the interactive process in good faith, and that, as a result, Chrysler's motion for summary judgment must be denied. This does not relieve Hines, however, of her burden to prove, at trial, that a reasonable accommodation in the form of reassignment could have been made at the time she requested

reassignment. *See Smith,* 180 F.3d at 1174 ("Even if [the employer] failed to fulfill its interactive obligations to help secure a reassignment position, [the employee] will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position."); *Phoenixville School District,* 174 F.3d at 162 ("an employee who wants a transfer to another position *ultimately* has the burden of showing the he or she can perform the essential functions of an open position." [emphasis added] ).

### ii. Reasonable Accommodation Would Have Been Possible

Because the law regarding the consequences of an employer's failure to participate in the interactive process in good faith is murky at best, I will, nevertheless, proceed to a brief analysis of the fourth prong of Hines' *prima facie* case even though I have already disposed of Chrysler's motion for summary judgment.

█ The fourth prong of Hines' *prima facie* case requires her to produce evidence that she "was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made." *Smith,* 180 F.3d at 1179. Chrysler contends that Hines has not identified a vacant position which was available when she requested reassignment. (Def.'s Br. at 18–19; Def.'s Reply at 24–25.) I disagree.

Hines has identified vacant positions in Memphis, Huntsville, and Quebec. Hines applied for a Retail Credit Specialist position in Quebec, Canada, and a position in the Production Engineer Department in Huntsville, Alabama. (Def.'s Br., Statement of Undisputed Material Facts ¶ 33; admitted at Pl.'s Resp., Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 33.) Sarzyenski testified in his deposition that (1) between August 1997 and June 1998, Chrysler hired four picker-packers in Memphis, (2) after June 1998, Chrysler hired another eight picker-packers in Memphis, and (3) after June 1998, Chrysler hired eighty-five full-time, hourly employees. (*Id.,* Ex. 8 [Sarzyenski Dep. at 75–77].) Based on this evidence, I find that there is a genuine issue of material fact as to whether Hines has identified vacant positions that existed at the time she requested reassignment for which she was qualified.

Chrysler argues that, because Hines was incapable of performing work as a picker-packer, she could not have performed the work required of the picker-packer positions filled in Memphis. (Def.'s Br. at 19.) Chrysler's argument, however, misrepresents the evidence on record. It is undisputed that Chrysler offers thirteen different jobs under the picker-packer classification. (Def.'s Reply, Ex. M [Walker Aff., Attach A (Seniority Jobs) ].) Although Hines cannot perform the functions of the picker-packer position she held at Chrysler prior to her injury, Hines is capable of performing work required of other picker-packer positions such as Janitor, Stacker Operator, Exception Clerk, Dispatcher, and Back Order Clerk. (Pl.'s Resp., Ex. 6 [Sarzyenski Dep. at 32], Ex. 11 [Whitney Dep. at 98–101].) Chrysler has not put forth any evidence that the picker-packer positions filled in Memphis were not one of the five picker-packer positions that Hines could have performed. Accordingly, viewing the evidence in the light most favorable to Hines, I find that there is a genuine issue of material fact as to whether there were vacant positions in Memphis for which Hines was qualified.

Chrysler also argues that, even if Hines identified vacant positions in Memphis or Huntsville, Hines would have received date of entry seniority at those plants under the collective bargaining agreement. (Def.'s Br. at 14–19.) According to Chrysler, under the terms of its collective bargaining agreement, Hines, as a transferred employee, would have been "the least senior employee at the new facility and would, therefore likely receive the most difficult, physically demanding, lowest seniority job." (*Id.* at 16.) While Chrysler correctly notes that it is not required to violate seniority provisions of a collective bargaining agreement when reassigning a qualified disabled employee under the ADA, *Smith,* 180 F.3d at 1175, simply stating that Hines' requests for reassignment would have violated seniority provisions of the collective bargaining agreement is not sufficient to win on summary judgment. *Id.* Chrysler merely recites the terms of the collective bargaining agreement in support of its argument that Hines was not qualified for positions in Memphis or Huntsville. Chrysler has not put forth any evidence that the other individuals hired at Memphis, Huntsville, or Quebec possessed any more seniority than Hines. Viewing the facts in the light most favorable to Hines, I find that there is a genuine issue of material fact as to whether Hines possessed sufficient seniority under the collective bargaining agreement to transfer to another position at Chrysler. Accordingly, Chrysler's motion for summary judgment in this regard is also denied.

### iii. Hines Has Already Been Reasonably Accommodated

Finally, Chrysler contends that, because there were not any vacant positions available at the time Hines requested reassignment, it has reasonably accommodated Hines by placing her on layoff and paying her 95% of her pay after taxes. (Def.'s Br. at 19–20; Def.'s Reply at 26.) Since I have already decided that there is a genuine issue of material fact as to whether a vacant position was available to Hines at the time she requested reassignment, I need not address Chrysler's argument that her lay-off status is a sufficient accommodation in lieu of reassignment.

### 3. Conclusion

Based on the foregoing it is therefore

ORDERED as follows:

1. Defendant's motion for summary judgment (# 91) is DENIED.

2. Defendant's motion to file a supplemental brief (# 114) is GRANTED.

3. The court will hold a final pretrial conference at 9:00 o'clock a.m. on Friday, *November 15, 2002,* in Courtroom 14 of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado. The parties will comply with the attached in preparing the final pretrial order.